IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**GEROLD GALLEGOS,**

      **Plaintiff,**

**vs.**                                                                **No.  09cv0057 DJS/ACT**

**DIRK KEMPTHORNE, Secretary
of the Interior, and THE UNITED
STATES DEPARTMENT OF THE
INTERIOR,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

      This matter is before the Court on Plaintiff's request for review of the Merit Systems Protection Board's decision.  This is a mixed case.  Plaintiff alleges claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, and he also seeks judicial review of the Merit Systems Protection Board's (MSPB) decision concerning the Bureau of Indian Affairs's (BIA) elimination of his position in connection with a reduction in force (RIF) at the Northern Pueblos Agency (NPA) in 2006.  Only Plaintiff's non-Title VII claims are before the Court.

### I.  Standard of Review

      The Court reviews the MSPB's decision on the administrative record. *See Williams v. Rice*, 983 F.2d 177, 179-80 (10th Cir.1993).  The Court must affirm the MSPB's decision unless the Court determines that the decision was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Daugherty v.*

*Thompson*, 322 F.3d 1249, 1254 (10th Cir. 2003).  The reviewing court "may not substitute its judgment for that of the MSPB."  *Williams*, 983 F.2d at 180 (quoting *Wilder v. Prokop*, 846 F.2d 613, 619 (10th Cir.1988)).

## II.  Factual Background

Plaintiff, an Hispanic male, has been employed with the BIA for more than twenty (20) years.  Am. Pet. for Review and Compl. ¶5.  In April 2003, pursuant to an EEO settlement agreement, Plaintiff was reassigned from South Dakota to the NPA in San Juan, New Mexico.  *Id.* ¶6.  Plaintiff was reassigned to a GS-12 Supervisory Social Worker position.  Plaintiff contends the original person selected for the GS-12 position in New Mexico was a Native American who had Indian preference but was not appointed because of Plaintiff's reassignment to the position.  *Id. ¶7.*  In the GS-12 position, Plaintiff supervised two other employees, a GS-11 social worker and a GS-8 social services technician, both Native Americans.  *Id.* ¶10.

On November 8, 2005, Cameron Martinez, also an Indian and the NPA Superintendent, issued a memorandum informing all employees about the "significant budget cuts" and the Fiscal Year 2006 budget allocation.  Def.'s Resp. Br.; Ex. A.  Specifically, the memorandum informed employees that "the Northern Pueblos Agency was impacted significantly in many of its programs and now faces the possibility of furloughing employees for a longer period of time or actually going through a Reduction-In-Force (RIF) where employees will actually be laid off from work."  *Id.*

Plaintiff was aware of the budget deficits.  In his supervisory position and at the request of his managers, Plaintiff drafted proposed budgets to address the deficits.  *Id.*; Ex. B; *see also* Pl.'s Opening Br.; Ex. 11.  Plaintiff also submitted monthly reports.  In the November and December 2005 reports and the January, February, and March 2006 reports, Plaintiff included

the following statement in all the reports: "The program continues to operate under a major program deficit and all technical assistance must be done via correspondence, fax, email, and telephone." Pl.'s Opening Br.; Ex. 6-10. Plaintiff also included a statement in his monthly reports regarding how the budget cuts were affecting the delivery of services. *Id.*

In October 2005, the NPA received its budget allocations for fiscal year 2006. After reviewing budget projections for fiscal years 2007 and 2008, Mr. Martinez realized it would be necessary to conduct a RIF in several areas, including social services.[1] Defs.' Resp. Br.; Ex. C. In a Memorandum dated October 17, 2005, Superintendent Martinez informed Larry Morin, the Regional Director for the Southwest Regional Office, of his decision to request a RIF and noted the following reasons in support of his decision: "1) the across-the-board recession of 0.476%; 2) the 5% of funds withheld pending additional Congressional action; 3) the 1.5% of funds withheld by Central Office pending additional BIA shortfall; and 4) official letter and tribal council resolution from the Pueblo of San Juan to contract[2] their tribal share this year." *Id.*; Ex. D. Superintendent Martinez noted the budget breakdown indicated the allocation started with a deficit because it did not provide sufficient funding to cover salaries and benefits for the Supervisory Social Worker position and the Social Worker position. Therefore, Superintendent Martinez requested permission to abolish the Supervisory Social Worker position and his intention to retain the Social Worker position that would provide technical assistance and service to the tribes and the program. *Id.*

---

[1] Superintendent Martinez also requested he be allowed to abolish positions and began RIF procedures in the irrigation and road maintenance sections and firefighter crews due to budget deficits and program reductions in those areas. Def.'s Resp. Br.; Ex. C.

[2] A private contractor signed the contract to provide services to the Pueblo of San Juan on September 8, 2006. Pl.'s Opening Br.; Ex. 4.

On December 19, 2005, Dawn Selwyn, the Deputy Regional Director, responded to Superintendent Martinez's October 17, 2005 request for a RIF. Defs.' Resp. Br.; Ex. E. Ms. Selwyn found Superintendent Martinez's rationale for the RIF "fully supported by the facts" and directed Superintendent Martinez to "proceed with the RIF at the Northern Pueblos Agency." *Id.*

In a Memorandum dated March 14, 2006, Karen Parrish, Southwest Human Resources Officer, gave Plaintiff notice of the RIF.[3] In the March 14, 2006 Memorandum, Ms. Parrish stated, in relevant part:

> This is to inform you that it has become necessary to affect a Reduction-in-Force (RIF) within the Branch of Social Services, in San Juan, New Mexico. This RIF results from the decision to abolish your position because of lack of funds. This action requires application of the RIF regulations and the issuance of a Specific Notice of RIF not less than sixty (60) days prior to the effective date of the action. The effective date of the action is May 15, 2006. The retention rights of all employees have been carefully checked, and you have been reached for release from your competitive level.
>
> \* \* \* \*
>
> You are within reach for release from your competitive level shown above (185-12) because your position was abolished. After reviewing the retention register for your competitive area, I must notify you that there are no positions occupied in lower subgroups of your competitive level or other competitive levels to which you are entitled. Therefore, it will be necessary to affect your separation effective May 15, 2006.

Pl.'s Opening Br.; Ex. 5. Specifically, Plaintiff had no retention rights because the only position after the RIF to which Plaintiff claimed a retreat right was Ms. McKinley's GS-11 position. However, Ms. McKinley had a higher retention status of IB1 versus Plaintiff's IB2 status, due to Indian Preference. Defs.' Resp. Br.; Ex. I, Ex. J. The RIF notice also informed Plaintiff of his right to discontinued service retirement and the availability upon request of the Retention

---

[3] Along with the RIF notice, Ms. Parrish provided Plaintiff with a copy of the Office of Personnel Management's Employee's Guide to Benefits for Those Affected by Reduction in Force. Defs.' Resp. Br.; Ex. F.

4

Register and RIF rules and regulations for his review. *Id.* Finally, Ms. Parrish attached the RIF supplemental information as part of Plaintiff's notice. *Id.;* Ex. G.

Plaintiff retired under his right to discontinued service retirement effective the date of the RIF, May 16, 2006. *Id.*; Ex. K. Ms. McKinley continued in her GS-11 position. Pl.'s Opening Br. at 2. On May 19, 2006, Plaintiff appealed his RIF separation to the MSPB, disputing the *bona fides* of the RIF, claiming a retreat right to the GS-11 position, and claiming his rights under 25 U.S.C. §472a(d) were violated. *Id.* at 3.

On June 6, 2006, the BIA provided Plaintiff with specific information regarding how Plaintiff could apply for the re-employment list. Defs.' Resp. Br.; Ex. H. On June 10, 2006, Ms. McKinley vacated the GS-11 position for another employment opportunity, separating from the GS-11 position. Pl.'s Opening Br. at 2. Plaintiff sought reassignment to the GS-11 position, but his request was denied. *Id.* Moreover, although the GS-11 position was posted, Mr. Morin decided not to fill the position because Plaintiff was challenging his separation by the RIF through an administrative appeal, alleging discrimination on the basis of race and/or national origin and reprisal. *Id.*

On March 19, 2007, the MSPB Administrative Judge (AJ) issued her Initial Decision affirming the agency's RIF action. Pl.'s Opening Br.; Ex. 1. Citing to 5 C.F.R. §351.201(a)(2), the AJ found the agency conducted the RIF for *bona fide* governmental reasons. *Id.* at 4-7. The AJ further found that under 5 U.S.C. §472a the agency established that it properly applied Indian preference rights when it evaluated Plaintiff's retreat right to the position encumbered by Ms. McKinley. *Id.* at 7-9. Plaintiff seeks judicial review of the AJ's Initial Decision as to these issues.

### III.  Discussion

#### A.  MSPB Decision Regarding the Agency's RIF

In his appeal to the MSPB, Plaintiff challenged the RIF action, disputing the *bona fides* of the RIF.  Pl's. Opening Br.; Ex. 1 pp. 2-3.  Plaintiff asserted the agency's decision to abolish his position was not *bona fide* because (1) the social services function at issue had not yet been contracted out to the San Juan Pueblo at the time of the RIF; (2) BIA could have allocated the money differently; and (3) Ms. McKinley advised the agency prior to the effective date of the RIF that she was applying for other positions and intended to leave the Northern Pueblos office.[4] *Id.;* Ex. 1 pp. 3, 8-10.

The AJ affirmed the agency's RIF action.  The AJ found the agency had proven by preponderant evidence that it conducted the RIF for legitimate reasons, i.e., a shortage of funds. *Id*.; Ex. 1, p. 7.  Specifically, the AJ found:

> It is undisputed that social services had a severe budget deficit since at least FY 2004.  The appellant himself was advising management that the program could not properly function because of the severe budget limitations.  The agency was also anticipating continued and increased deficits due to budget reductions and the contracting out of the social services functions to the San Juan Pueblo.  Anticipated budget reductions are an appropriate basis for eliminating positions and implementing a RIF.

*Id.*; Ex. 1, p. 6.

Under 5 C.F.R. §351.201(a)(2) an agency may invoke RIF procedures "when it releases a competing employee, . . .  because of lack of work; shortage of funds; insufficient personnel

---

[4] Assuming the agency had a *bona fide* reason for invoking RIF procedures, Plaintiff stipulated that the competitive area and competitive level used in the RIF were correct.  Pl.'s Opening Br.; Ex. 1 p. 7.  "The stipulation will satisfy a party's burden of proving the fact alleged."  5 C.F.R. §1201.63; *see also Swift v. Office of Personnel Mgmt.*, 48 M.S.P.R. 441, 445 (M.S.P.B. 1991).

6

ceiling; reorganization; the exercise of reemployment rights or reclassification of an employee's position due to erosion of duties . . . ." Once the agency has shown that it invoked RIF regulations for a permissible reason, "the [MSPB] lacks the authority to review the management considerations underlying the exercise of the agency's discretion, including the decision whether to preserve or abolish a particular position." *See Winchester v. Tennessee Valley Authority*, 55 M.S.P.R. 485,489-90 (M.S.P.B. 1992); *Willson v. Department of the Army*, 25 M.S.P.R. 167, 171 (M.S.P. B. 1984).

In this case, substantial evidence supports the AJ's finding that "shortage of funds" was a legitimate reason for the agency to conduct the RIF. Reduction in funding was a significant problem for many of the programs at the NPA in late 2005. The evidence shows that on October 26, 2005, Superintendent Martinez sent out a Memorandum to all agency employees informing them of the reduction in funding. Specifically, the Memorandum stated: "These budget cuts necessitate that we make changes in the way we provide services to the Pueblos within our jurisdiction of the Northern Pueblos Agency." Defs.' Resp. Br.; Ex. A. In a November 8, 2005 Memorandum, Superintendent Martinez noted the shortage of funds the BIA was facing and informed employees of the impact that would have on the NPA and its programs and the possibility of a RIF. *Id.* Significantly, Plaintiff also submitted monthly reports to Superintendent Martinez regarding the budget deficits and how the deficits "inhibit[ed] staff outreach activities." Pl.'s Opening Br.; Ex. 6; Defs.' Resp. Br.; Ex. B.

The AJ also found "credible and reasonable" Superintendent "Martinez's testimony that he elected to abolish [Plaintiff's] GS-12 supervisory position instead of the GS-11 non-supervisory position since the remaining work could be performed by a non-supervisory GS-11." Pl.'s Opening Br.; Ex. 1 p. 6. Superintendent Martinez also testified "there were no longer any

7

supervisory functions for a GS-12 supervisory social worker to perform." *Id.* The AJ's credibility determinations are given substantial deference on judicial review. *Thunderbird Propellers, Inc. v. F.A.A.*, 191 F.3d 1290, 1297 (10th Cir. 1999)("We cannot reweigh the evidence or reevaluate the ALJ's credibility determination.").

As to Plaintiff's contention that Ms. McKinley had advised the agency prior to the effective date of the RIF that she was applying for other positions and intended to leave the Northern Pueblos office, the AJ found "the agency had no obligation to forgo implementing the RIF based on McKinley's claim that she was looking for a new position and hoped to change jobs." Pl.'s Opening Br.; Ex. 1 p. 6. The AJ reasoned that as long as Ms. McKinley "remained in her job, her position was encumbered and was not available for consideration as a placement option for [Plaintiff]." *Id.* This was so because "prior to the effective date of the RIF, the agency had no indication when Ms. McKinley might resign." *Id.*

Based on the administrative record, the Court finds that the MSPB's determination that the agency conducted the RIF for legitimate reasons is supported by substantial evidence and is not arbitrary or capricious.

## B. Application of 25 U.S.C. §472a

Plaintiff also claimed a retreat right to the position encumbered by Ms. McKinley. Pl.'s Opening Br.; Ex. 1 pp. 2-3, 11-16. Plaintiff contends the agency did not correctly apply 25 U.S.C. §472a. Section 472a states:

**Indian preference laws applicable to Bureau of Indian Affairs and Indian Health Service positions**

**(a)     Establishment of retention categories for purposes of reduction-in-force procedures**

> For purposes of applying reduction-in-force procedures under subsection (a) of section 3502 of Title 5 with respect to positions with the Bureau of Indian Affairs and the Indian Health Service, the competitive and excepted service retention registers shall be combined, and any employee entitled to Indian preference who is within a retention category established under regulations prescribed under such subsection to provide due effect to military preference shall be entitled to be retained in preference to other employees not entitled to Indian preference who are within such retention category.

25 U.S.C. §472a(a).

In her decision, the AJ found "the agency had established that it properly applied Indian preference rights when evaluating [Plaintiff's] retreat rights to the position encumbered by Shirley McKinley." Pl.'s Opening Br.; Ex. 1, p. 7. Specifically, the AJ stated:

> As noted, the appellant claimed a right of retreat to the position encumbered by Shirley McKinley. In turn, the agency stipulated that but for the application of Indian preference, the appellant, a non-Indian, would have had the right to retreat into the position encumbered by McKinley, who was an agency employee entitled to Indian Preference.
>
> * * *
>
> The board discussed, in detail, the history of 5 U.S.C. §472a in *Antoine v. Department of Interior*, 63 M.S.P.R. 185, 187 (1994). The Board noted that the U.S. Court of Appeals for the Tenth Circuit in *Mescalero Apache Tribe v. Hickel*, 432 F.2d 956, 959-61 (10th Cir. 1970), *cert. denied sub nom., Mescalero Apache Tribe v. Russell*, 401 U.S. 981, 91 S.Ct. 1195, 28 L.Ed.2d 333 (1971), found that Indian employees of the BIA were not entitled to preferential treatment in RIF actions under the provisions of 25 U.S.C. §§44, 46, and 472. In *Antoine*, the Board found that in 1979, Congress enacted section 472a, granting Indian employees of the BIA and the Indian Health Service (HIS) retention preference in RIFs in order to "overcome the adverse effects of the *Mescalero* decision." *Preston v. Heckler*, 734 F.2d 1359, 1371 n. 15 (9th Cir. 1984)(quoting the legislative history of title 25 U.S.C. §472a, H.R.Rep. No. 370, 96th Cong., 1st Sess. 12 (1979), reprinted in 1979 U.S. Code Cong. & Adm. News 2068, 2077)).
>
> The Board has found that Congress chose to enact 25 U.S.C. §472a in order to afford RIF retention preference to Indian employees of the BIA and IHS over non-Indian employees. *Antoine*, 63 M.S.P.R. at 187. Since the statutory provision found at 5 U.S.C. §472a is clear on its face and relevant Board precedent has interpreted this provision as applying Indian preference when a RIF is conducted involving employees of the BIA, I find that the agency properly denied the appellant, a non-Indian, a right to retreat to the position encumbered by McKinley, an Indian.

9

>Therefore, I find the agency has established, by preponderant evidence, that it properly analyzed the appellant's assignment rights in the RIF.

Pl.'s Opening Br.; Ex. 1 pp. 7-8.

Plaintiff complains that Ms. McKinley did not have his years of service or experience. Hence, Plaintiff argues he had retreat rights to Ms. Mckinley's position. Plaintiff takes issue with the agency's claim that 25 U.S.C. §472a(a) prevented him from retreating to the position held by Ms. Mckinley because she is an Indian and he is not. Plaintiff contends this is an overt form of discrimination based on race and/or national origin.

According to Plaintiff, 25 U.S.C. §472a(b) specifically states that Indian preference laws do not apply in the case of any reassignment with the Bureau of Indian Affairs "in the course of a reduction in force." *See* 25 U.S.C. §472a(b)(1)(B).[5] Section 472a(b) states in relevant part:

>(b)   **Reassignment of employees other than to positions in higher grades; authority to make determinations respecting**
>
>(1)   The Indian preference laws shall not apply in the case of any reassignment within the Bureau of Indian Affairs or with the Indian Health Service (other than to a position in a higher grade) of an employee not entitled to Indian preference if it is determined that under the circumstance such reassignment is necessary–
>
>   (A)   to assure the health and safety of the employee or of any member of the employees' household
>
>       (B)   in the course of a reduction in force; or

---

[5] In support of his position, Plaintiff cites to *Mescalero Apache Tribe v. Hickel*, 432 F.2d 956 (10th Cir. 1970), which held that Indian preference statute applied only to appointment to vacancies in Bureau of Indian Affairs but did not apply to reduction in force. However, *Mescalero Apache Tribe v. Hickel* was superseded by legislation. *See* Pub.L. 96-135 (1979), 25 U.S.C. §472(a)(a); *see also Mescalero Apache Tribe v. Rhoades*, 804 F.Supp. 251, 257-58 (D.N.M. Sept. 22, 1992)("The superseding legislation made evident that the Indian Preference Act extends not only to the filling of vacancies but also to the retention of Indian employees in the face of a reduction in force." ).

>     (C )    because the employee's working relationship with a tribe has so deteriorated that the employee cannot provide effective service for such tribe or the Federal Government.
>
>     (2)    The authority to make any determination under subparagraph (A), (B), or (C) of paragraph (1) is vested in the Secretary of the Interior with respect to the Bureau of Indian Affairs and the Secretary of Health and Human Services with respect to the Indian Health Service, and, notwithstanding any other provision of law, the Secretary involved may not delegate such authority to any individual other than a Deputy Secretary or Assistant Secretary of the respective department.

25 U.S.C. §472a(b)(1), (2).

Although §472a(b)(1)(B) supports Plaintiff's argument, §472a(b)(2) makes clear that only the Secretary of the Interior or the Deputy Secretary or Assistant Secretary of the respective department can determine when such circumstances exist to apply these exceptions. The legislative history also makes clear that §472a(b) is to be applied in "limited and carefully defined exceptions to Indian preference for the placement of non-Indian employees . . . ." H.R.Rep. No. 370, 96th Cong., 1st Sess. 12 (1979), *reprinted in* 1979 U.S.Code Cong. & Admin. News 2068, 2074. In this case, the Secretary did not determine that circumstances existed that made it necessary to reassign Plaintiff to the position encumbered by Ms. Mckinley. Accordingly, the Court finds that the AJ's finding that "the agency had established, by preponderant evidence, that it properly analyzed the [Plaintiff's] assignment rights in the RIF" was not arbitrary or capricious.

### C.  Rights under 25 U.S.C. §472a(d)

Plaintiff also contends his rights under 25 U.S.C. § 472a(d) were violated when he received no assistance from the agency in finding another federal position. Specifically, Plaintiff contends "the Agency's failure to advise OPM of his need for 'all appropriate assistance' once he was notified of his impending separation by RIF amounts to 'harmful error' and renders his

11

separation 'contrary to law.'" Pl.'s Reply at 7. Ms. Parrish's testimony at the administrative hearing supports Plaintiff's claim that the agency did not assist him in finding another federal position.

Section 472a(d) states:

> **(d) Placement of non-Indian employees in other Federal positions; assistance of Office of Personnel Management; cooperation of other Federal Agencies; reporting requirements**
>
> The Office of Personnel Management shall provide all appropriate assistance to the Bureau of Indian Affairs and the Indian Health Service in placing non-Indian employees of such agencies in other Federal positions. All other agencies shall cooperate to the fullest extent possible in such placement efforts.

25 U.S.C. §472a(d).

In her decision, the AJ found that Plaintiff had "failed to identify what, if anything, the agency or OPM could have done differently with regard to his placement rights." Pl.'s Opening Br.; Ex. 1 p. 9.

First, §472a(d) does not mandate any action from the BIA. Second, OPM ultimately receives all employee files when an employee is separated from federal service and thus had notice when Plaintiff was separated from his position. Additionally, the BIA assisted Plaintiff by providing him with a copy of OPM's publication, "Employee's Guide to Benefits for Those Affected by Reduction in Force." Defs.' Resp. Br.; Ex. F. The RIF notice also informed Plaintiff that the Retention Register and RIF rules and regulations were available for his review upon request. Pl.'s Opening Br.; Ex. 5. The Retention Register and RIF rules and regulations provided supplemental information on the BIA's re-employment priority list and the OPM's displaced employee program. Defs.' Resp. Br.; Ex. G. Finally, the BIA provided Plaintiff with specific information on how he could apply for the re-employment priority list. *Id.*; Ex. H.

It would have been preferable for BIA to follow its own manual.  Chapter 351 of the BIA Manual addresses Reduction In Force Assignment Rights and states in pertinent part:

subchapter 4.   Assignment Rights

.1   Assignment of Career or Career conditional Competitive and Excepted Employees

A.   All available employment sources shall be explored for possible placement of employees who will be affected by reduction in force.  Employees with assignment rights reached in reduction in force action shall be separated after an advance notice of 30 full calendar days.  The following actions shall be taken in locating employment for permanent employees:

\* \* \*

(4)   If assignment is not possible within the Bureau, contacts will be made with other federal agencies for placement possibilities.

44 BIAM 351 4.1.

However, as Defendants point out, an agency manual, in contrast to a regulation, is not necessarily entitled to the force and effect of law.  *See Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468 (1981); *see also Aragon v. United States*, 146 F.3d 819, 824 (10th Cir. 1998).  "This is particularly true if the agency did not intend the manual to be mandatory, but rather intended it as a guidance or advisory document."  *Aragon*, 146 F.3d at 824.  There is nothing in the record indicating the BIA Manual was mandatory.  Accordingly, the Court finds that the AJ's finding that the agency did not violate the statutory provisions of 25 U.S.C. §472a(d) is not arbitrary or capricious.

13

**D.  Conclusion**

      Based on the administrative record, Plaintiff has not shown that the decision of the MSPB is arbitrary or capricious, contrary to law or unsupported by substantial evidence.  Accordingly, the MSPB decision as to Plaintiff's non-Title VII claims is affirmed.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**

14